This is number 2010-7012, John W. Caldwell against the Secretary of Veterans Affairs. Mr. Carpenter. Thank you very much, Your Honor. May it please the Court, Mr. Carpenter appearing on behalf of Mr. John Caldwell. Mr. Caldwell presents two issues in this appeal. The first issue deals with whether or not the Veterans Court decided Mr. Caldwell's appeal to it on grounds other than the grounds relied upon by the Board of Veterans Appeals. The Board did not rely upon the implicit denial rule. This matter was sent back by the Court in a prior proceeding to the Board of Veterans Appeals to expressly determine whether or not the specific record from the Duke Medical Center emergency room was or was not an informal claim under the appropriate regulation. The Board did so by saying that it was not an informal claim. When we got back to the Veterans Court, we presented to the Veterans Court an argument about whether or not the Board had relied upon a misinterpretation of 38 CFR 3.157B2, and the Court, instead of responding to that argument as presented based upon the grounds that were decided by the Board of Veterans Appeals, pulled out of the ether the implicit denial rule and said that regardless of whether it was or was not an informal claim, that the matter was covered by the implicit denial rule. It is Mr. Caldwell's position that that was a matter that should have been reached by the Board of Veterans Appeals in the first instance, and the Court addressing it violates the rule under Chenoweth because the conclusion arrived at by the Veterans Court relied upon a ground that was not decided by the Veterans Court. If there are no further... Excuse me? Not decided by the Board. Not decided by the Board. I'm sorry if I misspoke. If there are no specific questions on that, I'll turn to the argument in the alternative, which is whether or not when the Court did apply the implicit denial rule, they applied it correctly. Mr. Caldwell asserts that they did not. This Court recently in the Monroe case considered the application of the implicit denial rule to this regulation, but as to that portion of the regulation that dealt with VA medical records as opposed to private medical records. The differentiation is made under the regulation between VA medical records and private medical records. In this case, the question becomes after Monroe's reliance upon the Williams decision that a subsequent final adjudication of a claim which is identical to the pending claim had not been finally adjudicated terminates the pending status of the earlier claim. The question that is presented by this case is whether or not what was at issue here was identical. Clearly, what was at issue here was not identical. In fact, if you examine the record, there was in fact a claim made by Mr. Caldwell in December of 1985. It's in the joint appendix at page 213. And that claim, in a statement in support of the claim, he indicates that he was currently rated 10% for his back condition and that he was hospitalized then at a VA facility and that prior to his hospitalization, he had been seen at the Duke University Hospital emergency room. And on that basis, he asked for a reevaluation of his 10% rating. It is Mr. Caldwell's position that he has never received a ratings decision on that. What about the April 11th decision? We've carefully reviewed your claim based on all the evidence of record, including the hospital report and sticking with the 10%. Your Honor, that is not a decision. That is a notice. And that is a notice that was deferred by the rating decision that was relied upon by the Veterans Court, which was the February 1985 decision. The February 1985 decision is found at the record, and I believe it's 25. Yes. And that decision relates only to an administrative determination based upon his period of hospitalization. It was determined that he had been hospitalized for a service-connected condition, that that period of hospitalization had lasted more than 21 days, and therefore he was entitled to an award of temporary total benefits. What is important about that notice in April is two things. First, the Veterans Court does not rely upon that. It relies on the February 1985 decision. Secondly, what's important about that is that that decision does not indicate explicitly to Mr. Caldwell Caldwell. I'm sorry. I went blank. He was a witness in the previous case. That's about where my confusion arose. But Mr. Caldwell had expressly asked for consideration of not only his period of hospitalization, but his treatment at Duke University. As Your Honor correctly points out, the notice that he received said that they considered the record from his period of hospitalization, but made no mention whatsoever of the Duke University report. And therefore there is a question that arises as to whether or not there is any basis for any reasonable claim under the Williams standard to determine that this award, or excuse me, that his claim made had been denied. Nothing was denied in the February 1985 decision. To the contrary, what was granted was a period of- February 1986, right? I'm sorry, 1986. We're spanning 85 to 86. It leaps over from November 1985 with the claim happening in December and the decision being made in February 1986 and the notice being provided for in April of 1986. The other problem with that notice is that if you read the notice, it's very difficult to tell from that notice that he had in fact been awarded any benefit. If you read that on its face, there's no indication that anything happened other than no change. Now it seems to me that it's very difficult for the Veterans Court to then have correctly applied the implicit denial rule, which requires a reasonable understanding of what happened, to have happened through the decision that they relied on, the February 1985 decision. It may be an arguable matter under the April 1986 decision, but the 1986, excuse me, 1986 notice- Notice. But the 1986 was a notice, not a decision. And in fact, it doesn't explain what happened, as is required by the statute, in the February 1986 rating decision. So it is Mr. Caldwell's position that when the Veterans Court exceeded its authority under Chenery and took up the matter on different grounds by relying upon the implicit denial rule, it incorrectly applied the implicit denial rule. There is simply no basis in this record to suggest that this was the identical situation. What makes these situations different is, as the board noted in its decision on remand, what was raised by, what was argued was raised by the November 1985 record, was a claim for an extra schedule or rating based upon unemployability. The decision that was made in February 1986 was merely a temporary total rating based upon a period of hospitalization. These are two entirely different benefits. One is a temporary benefit and one is a permanent benefit until there is a change in the employability standard. And that would be an ongoing benefit. And really what's at issue in Mr. Caldwell's case is, is that in 1991 he initiated a claim for a total rating because what happened was they changed the nature or characterization of the way in which this condition was rated. It was initially rated as a physical condition to his back, recognizing that it had psychiatric overlay, but at the time of the initial rating he was entitled to a higher rating because of the physical disability than from the psychiatric disability. Later it was discovered that in fact the psychiatric overlay was the basis that afforded the higher rating, and he was entitled to a 100% rating, which he would have been entitled to consideration of, even on an extra scheduler basis based upon his inability to work due to his service-connected back condition due to the pain, which is precisely the reasonable possibility that was raised as contemplated by 3.157B2 by the private Duke medical record. Unless there are any questions, I'll reserve the balance of my time. Okay. Thank you, Mr. Carpenter. Mr. Austin.  May it please the Court. The Veterans Court correctly applied the implicit denial rule in concluding that the RO's February 1986 decision constituted an adjudication of any informal claim that existed from the November 25, 1985, Duke medical emergency room report. Additionally, the Veterans Court did not violate the Chenery Doctrine in applying the implicit denial rule as the basis for its decision to affirm the April 2000 board decision. Although the board did not base its decision upon the implicit denial rule, the Veterans Court based its decision upon factual findings and analysis made by the board and the Veterans Court's duty to consider the rule of prejudicial error. The RO's February 1986 decision resolved all issues that were formally raised in the December 1985 formal claim as well as any possible issue raised by the purported informal claim consisting of the November 25, 1985, Duke emergency room report. In his reply brief, not in his main brief, Mr. Caldwell contends that Adams, Deschatelle, Williams, Monroe, which came after the briefing in this case, and the many other implicit denial decisions of this court are inapplicable because the February 1986 RO decision only explicitly ruled upon Mr. Caldwell's organic back impairment and not the psychological aspect stemming from that back condition. This is an incorrect interpretation of the implicit denial cases, and it really takes two steps to get to that analysis. Pursuant to the Deschatelle case, it is clear that the February 1986 RO adjudication implicitly denied any secondary psychiatric claim stemming from the formal December 10, 1985 claim. And that is under Deschatelle, based upon the formal claim, there is an implicit denial of any psychiatric claim. So how then do we get to the informal claim allegedly presented by the November 25, 1985, Duke emergency room report claim? That is done by the Williams case and also by Adams. In Williams, what this court said was the implicit denial rule does not just apply to claims that are simultaneously made, but they also apply to claims that are identical or very similar to subsequently adjudicated claims. In this case, assuming the December 1985 Duke emergency room report was an informal claim, it was implicitly denied by the February 1986 decision on the formal December 1985 claim, which was an identical claim. Under Deschatelle and Adams, there can be no doubt that Mr. Caldwell was on notice based upon the RO's February 1986 decision reinforced by the April 1986 notice that his claim had been denied. If you look at JA 213, which is Mr. Caldwell's claim, he states right in there that he was seen at the Duke University emergency room and on the basis of the medical records from both the Duke emergency room and from the hospitalization, he wants his back condition re-evaluated. There is simply no basis upon which this court could conclude or that the Veterans Court could conclude that once that decision was made, it did not constitute a decision not only on the December 10 formal claim, but not only on any possible informal claim stemming from the December 2, 1985 through January 10, 1986 hospitalization, and also the November 25, 1985 emergency report. They were all the same thing. There's absolutely nothing that was any different about that emergency room report as it compared to the hospitalization or to the December 10, 1985 decision. Where in the appendix is the emergency room report? Do we have that? Yes. That is on JA 24. And on JA 24, you can compare that to the hospitalization, which is in a couple places. Yeah, I saw the hospitalization. And if you look at the timing on the emergency room report, he was there for four hours on November 25. Four hours. Then he's seen one week later at the VA hospital for 40 days. Is there 40 days and nights in follow-up to the emergency room report? There's absolutely nothing in that emergency room report that is not contained in the 40-day hospitalization. Nor would you expect there to be. It's a follow-up. It's to the extent that there's any psychological issue raised at all in the emergency room report, and there's very little evidence of that if you examine the report, it is contained overwhelmingly in the hospitalization. Have you been able to interpret the handwriting on the emergency room report? It's not easy. We have quoted certain parts of it, but it's in our brief. I'll put it the question this way. Can you represent to us that there's nothing in that report that pertains to the psychiatric aspect of his injury? Yes. Okay. I want to put a little caveat on that, that any time there's a complaint of pain, which is reflected in there, arguably there's a psychiatric component to that. Well, if he didn't have any pain, presumably he wouldn't find his way to the emergency room. That's right. But, I mean, that's basically, it's a somatic pain disorder, which is a psychiatric. But to the extent there is any at all, and I don't believe there is any, it's subsumed with whatever's in the hospitalization 40 days later. The hospitalization is merely a follow-up. So the implicit denial rule has indicated that all of this court's decisions, and Adams and Monroe, the recent case of Jones, and also in Adams is exactly what happened here. And as soon as that decision came down, as soon as the notice came down, Mr. Caldwell was aware that his claim had been denied. Maybe he didn't know the diagnostic codes, and maybe he didn't know that they had carefully looked at the psychological aspects, as maybe he would have wanted them to if that had even entered his mind. But he knew his claim was denied, and he knew that he had a period of temporary total disability for which he received compensation from December 2, 1985 through January 30 of 1986. And both in the February 1986 decision and in the April 1986 bar decision, it said, you now have 10% impairment. Now, if he wasn't happy with that, if he felt that he should have received more total disability, if he felt that his permanent disability after the period of temporary total disability should have been greater than 10%, he had two options. His first option was to appeal that R.O. decision or those R.O. decisions. He did not do that, so it became a final decision. His second option was to claim at a subsequent time that there was clear and unmistakable error in that decision. He did that. And in pages 41 to 45, you can see an extensive articulation by then counsel for the plaintiff of exactly what he's claiming here, that the psychological aspects were not considered in that February 1986 R.O. decision, April 1986 R.O. decision, and that's clear and unmistakable error. And in 1994, he claimed that. That's when this claim was dated. That went all the way through the system, and it was ultimately decided in a final decision by the Veterans Court in 1999 that there is no clear and unmistakable error in the February 1986 decision because he didn't meet the standards required there, and as the court is well aware, the standard for clear and unmistakable error is much harder than a typical claim. It has to be an outcome-determinative type of error. So all this case is, all this effort is, is an attempt to find another vehicle other than clear and unmistakable error to get that effective date for his 100% disability back from September of 1992, where it currently is, back to 86. They didn't appeal the original decision. The statute and regulations make provision for clear and unmistakable error. That's a final decision. That was denied. This is another effort to do the same thing, and this court has not counted that in any of the implicit denial decisions, and it should not do so. Could we turn back for a moment to the Chenery issue? Yes. I'm having a little trouble figuring out exactly what the limits on the court's authority would be to reach a similar result on a different rationale. This may be a little bit unfair, but I'll ask the question anyway. I'm sure you're equipped to deal with unfair questions as well as fair ones. Could you give me an example of the kind of instance in which the court's action would, in the government's view, violate Chenery in the context of a board of veterans' appeals decision resolved on a different ground by the court? Let me use a hypothetical very similar to what we have here. We're relying here on the Fleshman case. In the Fleshman case, this court made a clear exception to Chenery where there is a factual predicate that is indicated in the board's decision. In this case, we have a very clear factual predicate, and that is on J.A. 181. And in J.A. 181 of the board's decision, you have a clear articulation by the board. Mr. Carpenter is absolutely right. There's no question here that they decided this issue not based on the implicit denial rule, but based on the fact that it wasn't an informal claim. But on J.A. 181, the board makes very clear that it looked at one specific question. And it looked at the question as to whether or not there were any informal claims that had not been adjudicated by the R.L. And it said all of these informal claims had been adjudicated. It went even further than that. It specifically said that one of the informal claims that it was looking at was the hospitalization from December 2, 1985, until January 30, 1986, and said that was a claim that was adjudicated. And it's simply inconceivable here that if the board felt that that hospitalization was an informal claim that was adjudicated in February of 1986, how it would not have reached the same conclusion that if, hypothetically, the November 25, 1985 Duke Emergency Report was an informal claim, that it, too, would not have been adjudicated. Because there's absolutely no difference, other than volume, between the December 1985 Duke Emergency Report and the hospitalization. So here you have a clear factual predicate through the Fleshman case where you can say, look, we know what the board would have done had it decided, contrary to what it did, that the December 1985 Duke Emergency Report was not an informal claim, or that it was. We know what it would have done. So here we have a system which is, by definition, supposed to be veteran-friendly. There is no question, it's undisputed, that there was a problem that took this veteran to the emergency room. So maybe there is a difficulty with how informal claim has been defined over these years. There's no question of the disability, of the ailment. It looks to me as if there's probably no question as to entitlement. But we have this technicality, if I could call it that. Perhaps we need to redefine the technicality. I think, Your Honor, if I could just defer one second to finish my thought there. If you don't have that factual predicate, as we have in this case, then I think that you would have a situation where Chenery would apply. So you're really relying on Fleshman? Yes. We have the factual predicate and the prejudicial error. But in terms of Your Honor's question, I think you have to look at the purpose of why we have the informal claim provision, particularly in Section 3.157, and it's for a situation that is exactly opposite what we have here. That provision is saying there's a medical report that constitutes an informal claim. It's for a situation to make sure that after there is a hospitalization, after there is a private medical report that the board knows about, that the board then does an adjudication to determine whether or not the veteran's entitled to benefits. It's not for a situation, which we have here, where you have an emergency report, which is followed by the responsible actions of Mr. Caldwell in filing a formal claim. Because by doing what he did appropriately, Mr. Caldwell not only filed a formal claim, but he specifically told the VA, I was at the Duke Emergency Group for a report. So there's no need for an informal claim in this particular situation. The situation where it's really necessary is when you don't have that formal claim file, where you have a veteran is seen in an emergency room and the VA finds out about it and doesn't then think, go to the next step to think to adjudicate that. We have that adjudication here. So the whole purpose of the informal claim problem is not met here. It doesn't mean it was an informal claim. It's simply a factor to be considered in that analysis. And, again, the Veterans Court concluded appropriately, in my view, that it didn't have to reach that issue because the implicit denial rule applies, and therefore there was no harm or no prejudice to Mr. Caldwell because if it was an informal claim but wasn't an informal claim, it doesn't matter because the claim was adjudicated. And I see that my time is out, and unless the court has any further questions, we would ask that the decision of the Veterans Court be affirmed. Okay. Thank you, Mr. Austin. Mr. Carpenter. I'd like to start with the Chenery argument. The notion that there is some sort of distinction here because they dealt with the February 1985 decision as having decided the period of hospitalization is a red herring. There's no dispute that that's what was decided. But what was decided was a favorable disposition. He was granted paragraph 29 benefits. That's all that decision said. The Veterans Court didn't rely upon the notice in April to justify. The VA, the board, did not rely upon the notification, and they expressly ignored the fact that under 3.157B2, it is about a private medical record that raises a possibility of an entitlement to a benefit. That's where the somatoform pain disorder comes in. Not that the record itself says this was psychiatrically oriented, but from the very beginning of the VA's analysis of Mr. Caldwell's disability in this case, it has been, is it physical or is it psychiatric? Clearly, we now have a medical record which confirms that it raises the reasonable possibility that what should be considered here should be considered under the psychiatric lens. But what about that record suggests that? The pain. That's the nature of this psychiatry. He has somatoform pain disorder. Well, but we know that now, but what about when you have that problem, you come in, you're going to have pain. That's in 100.0% of the cases. But that's in the original decision, Your Honor, that granted him service connection. They acknowledged that he had somatoform pain disorder. Sure. And even retroactively. But the question, though, is, I mean, unless you say that every single time someone goes to the emergency room with an orthopedic problem that's giving them pain, which is to say any orthopedic problem, that one of the considerations that's raised is the possibility of somatoform anxiety. That's an absurd result, Your Honor, but that's not the facts of this case. The facts in this case are that the VA recognized both the physical component and the psychiatric component, and the election that was made is required to be based upon which produces the greater rating. There is no indication that they ever looked at this other than under the rating schedule for the back. If you look at the diagnostic code that's referred to in the record on page 25, it refers to the physical diagnostic code. It does not refer to the psychiatric diagnostic code. And consequently, all that can be said about what is at page 25 of the joint appendix is that they decided that he was entitled to paragraph 29 benefits because he was hospitalized for his back condition as a physical condition. The suggestion that by the government at this point that they considered the psychiatric component is simply a post hoc rationalization. That doesn't exist in the record. There's nothing within the four corners of this rating decision that suggests that the psychiatric composition of his disability was ever considered in this rating decision in terms of whether or not the 10% rating should be restored. When they followed that, and it's also important to note that when they made this rating decision, they didn't have the discharge summary. So they didn't know what the discharge summary said. It says here, discharge 113.6, control for receipt of HR. That means they didn't have the record. They got the record between February of 1986 and the time they produced the notice in April of 1986. And they said your rating at a 10% for your back as a physical disability is continued. There's no reference to the Duke report in either the rating decision or in the notice. And to suggest that somehow Mr. Caldwell's formal claim, because he makes reference to that fact, limits the benefits under 3.157B2 is to render the regulation meaningless. The regulation is intended to say if there is a private medical record that raises the reasonable possibility, and what's that reasonable possibility? The psychiatric dimensions of his somatoform pain disorder. But aside from, again, maybe I'm just not seeing this in the right perspective, but if I understand my efforts to read, and Mr. Austin's perhaps more leisurely opportunity to read the Duke report, other than the reference to pain, there was nothing that one would have carried away from that report to say there's a potential possible psychiatric ingredient here. Yes, there is, Your Honor, that he hadn't been working. And it's the combination of pain that is so profound that it prevents you from working that maybe doesn't have its base in the physical dimension, but has its base in the psychiatric dimension. And that's the analysis that is required in order to properly evaluate. The issue here really ultimately boils down to is can you apply the implicit denial rule when the evaluation wasn't full and complete? They simply didn't consider the relevant record and the psychiatric overlap, which had existed from the time of discharge. Any questions? Thank you, Mr. Caldwell and Mr. Austin. Case is taken into submission.